## MENZE v. SCHMIDT.

### (Circuit Court, D. New Jersey. May 27, 1907.)

PATENTS—INFRINGEMENTS—CITHERNS.

The Menze patents, Nos. 603,699 and 642,472, for improvements in citherns (or zithers), must be strictly and narrowly construed in view of the prior art, and are both limited to an instrument having an offset or recess in its front in which a block provided with keys for sounding the strings is slidingly mounted; and neither are infringed by a construction in which such features are lacking.

In Equity. On final hearing.

Adolph L. Pincoffs (James L. Hopkins, of counsel), for complainant. Samuel G. Metcalf, for defendant.

CROSS, District Judge. This suit relates to letters patent Nos. 603,699 and 642,472, the former of which was issued to the complainant May 10, 1898, and the latter January 30, 1900. Both of them relate to new and useful improvements in citherns. The bill of complaint is in the usual form, alleges infringement, and prays for an injunction and other relief against the defendant. The defendant's expert has described a cithern, and as his description has been accepted by the counsel of the complainant, and adopted in his brief, it may be considered correct. It is as follows:

"The two patents in suit relate to alleged improvements upon so-called musical instruments, known as the cithern, the said two patents being so entitled. This cithern consists of a shallow box having a top, bottom and sides, over which metal strings are tightly stretched in the direction of the length of the wooden case. The case itself is provided at one end—its front —with pins around which, or to which, these strings are attached, directly in front of which is a metal bar, or bridge, over which the strings pass, and by which they are prevented from resting upon the upper portion of the case, known as the sounding board. At the other end there is a similar bridge, and a series of pegs, known as tuning pegs, one for each string, the function of such pegs being to permit of subjecting the strings to a greater or less strain, for the purpose of tuning the strings to different notes. So much of the instrument as described is very old, and in view of the fact that the strings are located in the same manner, and that the shape of the case is also similar to what is known as the German 'Zither,' the cithern has, for trade purposes, been known as the 'zither' in this country, although the method of stringing, tuning and playing is entirely different from the German zither."

The first patent has four claims, the first three of which are involved, and are subjoined:

"1. The combination with a cithern having an offset formed in the top side of its front end, of a block slidingly mounted in said offset, which block is provided with keys for sounding the strings of the cithern, substantially as specified.

"2. The combination with a cithern having an offset formed in the top side of its front end, of a block mounted to slide in said offset, spring-actuated keys operating in said block, spring-arms extending upward and rearward from the rear ends of said keys, and hammers carried by said spring-arms for striking the strings of the cithern, substantially as specified.

"3. A cithern constructed with an offset in the top side of its front end, a block arranged to slide in said offset. parallel ears formed integral with and extending upward from said block, spring-actuated keys operating in the re-

cesses between said ears, spring-arms extending upward and rearward from the rear ends of said keys, and cushioned hammers located upon the ends of said spring-arms and arranged to strike the strings of the cithern, substantially as specified."

The second patent has three claims, of which only the second is involved, and is as follows:

"2. In a cithern constructed with an offset in its front end, a block removably fixed in said offset, a plurality of bars fulcrumed in said block, arms seated in said bars and extending upwardly over the cithern-strings, hammers carried by said arms, keys fulcrumed in the block, said keys engaging against the under sides of and actuating the bars, and an elastic connection between each bar and its corresponding key, substantially as specified."

The patented device, as will be observed, is called in both patents a "cithern," but the testimony throughout refers to it as a "zither," and as such it is generally known. Zithers are operated either by plucking the strings with a finger or pick, or by striking the strings with hammers, as in the case of pianos of which they are crude and simple imitations. They are substantially miniature pianos. Indeed, the patentee in the second patent says:

"My improved cithern is operated or played in the same manner as is an ordinary piano; the proper keys being struck in succession to sound the strings."

And in his first patent, speaking of an arrangement of the keys which he says is practicable in his device, he adds:

"Which arrangement of keys would be similar to that of the keys in an ordinary piano."

The invention is certainly found in the musical art, and, if not directly in the same class in which the piano is found, it is so analogous thereto that I think citations in the one class are pertinent to the other. Indeed, in rejecting claims 1 and 2 of the second patent as applied for, the patent office examiner cited a number of prior patents against the application for the second patent under the following nomenclature: "Cithern, keyed," "Pianos without strings," "Auto-harps," "Pianos Agraffes," and "Guitars," which tends to show that instruments of this character may be and are classed under the general head of musical instruments. The defendant claims, in view of the prior art, that there is no novelty or invention exhibited in either of the patents in suit; that they are but a combination of old elements which do not produce a new and useful result as the product of the combination, but which, on the contrary, is a mere aggregation of several results, each of which is the complete result of one of the combined elements. In other words, that the claims in suit are all for aggregations of old elements in which each element performs its old function in the old way, and with no new result or function, and that they are therefore invalid. I do not deem it necessary, however, to go into the question of the validity of the complainant's patents, since I am satisfied that, in view of the prior art, the claims involved, in order to be sustained, must be literally and narrowly construed, and that when so construed the defendant has not infringed them. It is only by adhering strictly to the language of the claims that they can be distinguished from the prior

art. Take, for example, the Anderson patent No. 200,964, issued March 5, 1878, of which the inventor in his specifications says,

"The invention consists in the combination with the toy string instrument of a frame carrying spring hammers and keys adapted to be removably attached thereto."

And speaking further of the attachment he says:

"The above-described attachment is so adjusted that, when the depressed key is released, the hammer end is thrown down against the string and then retracted sufficiently for allowing the string to vibrate."

And its first claim is as follows:

"1. The combination, with the case, A, of a toy string musical instrument, of a frame carrying spring hammers and keys adapted to be removably attached to the said case, substantially as and for the purposes set forth."

This instrument seems to combine substantially all the features and advantages of the complainant's. The key action is manually adjustable over the strings, so that the striking points of the hammers can be changed at will or removed entirely, when the instrument can be played by the hand or with a pick, which is one of the advantages claimed to be secured in the first patent in suit by the key action being "slidingly mounted" in grooves. If the Anderson instrument is distinguishable at all from the complainant's, it is from the fact that its mechanism is adjusted on top of, or over, the strings, and not as in the complainant's zither in an offset formed in the top side of its front end, in which offset the block provided with the keys for sounding the strings is slidingly mounted. The claims of the complainant's patent all refer to this offset, as "formed in," or "in," the top side of the front end with the key-block, or block provided with strings for sounding the keys, "slidingly mounted," or "mounted to slide," in said offset, and it is in this particular form of construction that any novelty or invention shown in the complainant's first patent must be found. Consequently, if the defendant's device is an infringement, it must have this offset in the front end, with the block provided with the key action for sounding the strings, slidingly mounted therein. The complainant's expert admits that the Anderson patent is for a zither, and that its action is the same as that of the first patent in suit, but says that it has no extension, undoubtedly meaning thereby that it has no offset or open tray-like recess as called for by the first patent, and it is only in this respect that he distinguishes between them. Turning now to the Meinhold patent, a German patent issued May 21, 1880, for a child's zither in combination with a key board and hammers, the same result is reached. Meinhold shows an offset with a zither arranged perpendicularly thereto, substantially as shown in Figure 4 of the first patent in suit, and dotted lines in Figure 2 of the second patent. In this connection it may be added that complainant's expert admits that Figure 4 of the first patent embodies the elements referred to in claims 1, 2, and 3 of that patent. It is true the hammer arms shown by Meinhold are not spring arms, but spring hammer arms were old in the art, and the weighting of the hammers to cause them to rebound from the strings, as shown in the German patent, is an equivalent of the spring, and was so admitted by one of the

complainant's experts. Hence we again find that, in order to sustain the complainant's first patent, the body of his zither must have an offset or recess formed in its front end with the key-block inserted and mounted to slide therein.

The Schoenhut patent, No. 137,243, and the Lincoln patent, No. 149,232, substantially show the same key action as the complainant's patents. These patents are summarily dismissed by the complainant's expert, who, referring to the former, says:

"I do not think the patent comes within the claims of the Menze patents, in so far as they are not the same type of instrument and not of the same construction."

While as to the Lincoln patent he says:

"There are no strings stretched across the top of the sounding board as shown by the Menze patent, neither is there any extension of the main body of the device as called for by the Menze patents, whereby the key and hammer mechanism is supported. Consequently I see no similarity in the two devices."

It is quite evident from reading his testimony that he puts these patents out of consideration, largely because the hammers, instead of striking upon strings, strike upon steel bars or coiled springs whereby musical sounds are evoked. I see no difference in the principle of their construction, however, whether the hammers are made to strike on thin steel bars or upon strings. The action shown by these patents is quite like that shown in Figure 4 of the first patent, and in the figures of the second patent. The McDonald patent, No. 386,079, also shows the same action as Figure 4 of the first patent. It is constructed on the same principle, the sounding board over which the strings are strung being at right angles to the key-board. This patent is not seriously considered, however, by the complainant's expert, because, as he asserts, it is out of the class of musical instruments called for by the Menze patents. The Gori and Ernst patent, No. 3,504 and the Jobst patent, No. 61,182, also limit the art and confine the complainant's patents within narrow limits. I have referred to these several patents for the purpose of showing that the claims of both of the patents in suit, if sustained, must be confined strictly to their language. They are in no sense broad or basic. The art is very old, and I think fairly included all musical instruments having strings or bars or springs, which are made to give forth musical sounds upon being struck by hammers operated by keys. Given, the sounding board and strings of a zither or piano, which mainly differ in size, the problem of arranging a key and hammer system whereby musical notes might be produced could not differ in one case from the other. The difference would exist in dimension, and not in form of construction. Certainly it would not be contended that, if Menze had seen a large zither of the size of a piano operated in a given way, he could reduce the size of the action and transfer it bodily to a smaller zither and claim that such transfer manifested invention.

As already stated, each of the claims of the patents in suit require an offset formed in the top side of its front end, and also a block slidingly mounted, or mounted to slide in said offset. The specifications

describe, and the figures illustrate, this offset as a recess having an open top in front and adapted to receive and inclose the playing mechanism, which is so arranged upon a block that it may slide therein by means of tongues and grooves as called for by the claims, and whereby also the playing mechanism may at any time be removed. The defendant's playing mechanism is not thus arranged. It has no offset and the block carrying the playing mechanism is not slidingly mounted. The defendant's zither, however, has its body prolonged, a feature which appears in many of the early patents, and this prolongation is claimed by the complainant to be the offset mentioned in the claims of its patents, but it is not constructed as that offset is, and does not perform the same function. The mechanism of the defendant's instrument is not in the recess. It is not slidingly mounted, and consequently the hammers cannot be moved back and forth over the strings of the instrument or adjusted so that they strike the strings at any point desired, as may be done with the complainant's. There is no block slidingly mounted either within or without the offset in the defendant's instrument. The playing mechanism of the defendant's zither is secured fast on top of the instrument, and cannot be mounted, slidingly or otherwise, in the prolongation of the zither, and cannot be instantly removed to permit the instrument to be played by hand or adjusted at will to strike the strings at different points or at any desired point, without reconstruction. One of the complainant's experts, speaking of the defendant's zither, admits that there is no means shown whereby the key action carrying mechanism is susceptible of adjustment, and another of his experts says that the exhibits show that the housing or framework carrying the playing mechanism in the defendant's instrument is secured rigidly to the top of the body of the instrument by four screws, and that it has never occupied any other position thereon. Furthermore, the defendant himself swears that it has always been screwed rigidly on the top of the zithers before leaving the factory, and that he never knew of one that had been changed. The frame or housing in the defendant's zither is, as we have just seen, fixed rigidly on the top of the body of the instrument, and being so fixed it cannot be said to be slidingly mounted or mounted to slide in the offset. Hence it follows that the mere prolongation of the body of the defendant's zither is not an equivalent of the offset of the complainant's patents. It does not perform the same function.

That the playing mechanism in the alleged infringing device is secured rigidly to the top of the framework of the instrument by four screws is admitted. Notwithstanding this, however, the complainant's expert, Shallenberger, says that it is an infringement, and that this would be so even if it were nailed or glued, instead of screwed fast. His idea apparently is that any of these methods of fastening are not permanent. He admits, however, that if the end walls of the box or housing, instead of being secured by screws or nails or glue, were made integral with the side walls of the zither, the defendant's device would not infringe. It has already been shown that the playing mechanism of the defendant's instrument is fastened to the top of the zither, and there is no evidence that any zither has ever been made by the defendant

where the box which houses the mechanism was not so fastened, or any evidence that when so fastened it was subsequently changed. No question of trick or evasion is suggested. The question resolves itself then into this: If the sides of the box or housing are integral with the sides of the zither, there is admittedly no infringement; but, if the sides of the box or housing are glued to the sides of the zither, it is an infringement. A single board, properly fashioned, does not infringe; but two boards fashioned in the same way, but glued together, do. The result of this specious reasoning is that, if the ends of the box or housing of the zither were made integral, but by accident became split, and in repairing them they were glued together, the device, although originally innocent, would thereby become objectionable. Lastly, in this connection, the defendant's device has no "parallel ears, formed integral with and extending upward from said block," as called for by the third claim of the first patent. For the reasons above given, the claims of the complainant's first patent do not, in my opinion, include the defendant's device.

What has thus far been said appertains in some respects also to claim 2 of the second patent in suit. In considering this claim, the first patent in suit must be taken as forming a part of the prior art. In this claim we still find the elements of an offset in the front end of the zither, and a block "removably fixed" in said offset, which, according to Shallenberger, is equivalent to the terms "slidingly mounted" or "mounted to slide" of the first patent, in which respects it has already been shown that the defendant's device does not infringe. When the complainant's application for his second patent was pending in the Patent Office, claims 1 and 2, as filed were rejected in view of the earlier Menze patent and the patents of Schoenhut and Lincoln. The citations were accepted, and new claims prepared, of which the claim in controversy was one. Of the rejected claims, the second one read as follows:

"A cithern, constructed with an offset in its front end, a block removably located in said offset, a plurality of bars fulcrumed in said block, arms seated in said bars and extending upwardly over the strings of the cithern, hammers carried by said arms, and means carried by the block for actuating the bars to cause the hammers to strike downwardly upon the cithern strings, substantially as specified."

A comparison of this rejected claim with the claim under consideration shows that they are substantially alike, except that the claim as allowed calls for an elastic connection between each bar and its corresponding key. The spring shown in the Schoenhut patent and in the Lincoln patent is fastened at one end to the hammer butt, but is not fastened at the other end to the key, while in the Menze patent one end of the spring is attached to the butt, and the other end to the key, and it is this difference which saved the Menze patent. The key in the defendant's device is not attached, as required by Menze's patent, but is fastened very much like the spring in the Schoenhut and Lincoln patents. The only substantial difference between the rejected claim and the claim retained in the Menze patent was in the introduction of the spring attached at one end to the butt and at the other end to the key. Hence, to hold the claim valid, it must be in this respect

strictly construed, and, so construed, the defendant does not infringe it any more than do Schoenhut and Lincoln. The spring, however, adopted by the complainant, is an old one, and may be found in the Leaman patent of 1858. Many pertinent patents in the prior art have not been referred to; but sufficient has been said, I think, to show that the patents in suit, if sustained, must be construed on very narrow lines. The claims cannot be interpreted broadly without invalidating the patents.

I have reached the conclusion, therefore, that the defendant does not infringe either of the patents in suit as claimed. Hence the bill will be dismissed, with costs.